**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5961

MANUEL FREDDY PAULINO,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-95-158-AW)

Argued: November 1, 1996

Decided: November 20, 1996

Before WILKINSON, Chief Judge, and RUSSELL and WIDENER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stanley E. Baritz, Anthony James Pagano, Rockville,
Maryland, for Appellant. David Ira Salem, Assistant United States
Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lynne A.
Battaglia, United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Manuel Freddy Paulino was convicted of possession with intent to distribute cocaine, and possession of ammunition in or affecting interstate commerce by a known felon, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1). Paulino appeals his convictions on two grounds -- that the prosecution failed to turn over exculpatory Brady material to the defense, and that the district court erroneously allowed ATF agent Tom Love to testify as an expert on the issue of ammunition in interstate commerce. Finding no merit in the contentions, we affirm the judgment of the district court.

I.

Paulino was ordered to leave the country after being convicted in 1989 of possession of cocaine with intent to distribute. While conducting an extensive investigation of his brother, Aslan, federal agents discovered that Paulino had remained in the country in violation of the deportation order. The agents arrested Paulino on March 29, 1995 as he arrived in his car outside 1826 Metzerott Road #102.

After his arrest, Paulino signed consent forms allowing the agents to search his car and apartment #102, which he identified as his apartment and for which he provided an entrance key. In a bedroom which Paulino identified as his own, agents found a tally sheet, numerous documents both accurate and fake, and drug paraphernalia, such as a digital scale. In the closet of Paulino's bedroom, agents found a safe which they opened with a key and combination supplied by Paulino. Inside were another scale, rubber bands, baggies, boric acid (a narcotics cutting agent), and identification bearing Manuel Paulino's name. Also in the closet, agents found several bags of cocaine (totaling approximately 70 grams), a bottle of Inositol (a narcotics cutting agent), and a loaded ammunition clip. One of the bags of cocaine bore

2

Paulino's fingerprints. The apartment also contained a lease signed by Aslan and two others.

After a three day trial in September 1995, a jury found Paulino guilty of both possession of cocaine with intent to distribute and possession of ammunition by a known felon. Paulino was sentenced to 51 months in prison.

II.

A.

Paulino first challenges the prosecutor's failure to turn over exculpatory evidence that Paulino believes exists in government files. See Brady v. Maryland, 373 U.S. 83 (1963). He argues that since the government was investigating Aslan, it should have had documents which would show that Aslan, not Paulino, controlled apartment #102 at 1826 Metzerott Road, and was therefore in constructive possession of the drugs and ammunition. As evidence of the existence of such documents, Paulino points to a memorandum written by an investigating officer which stated that "[Assistant U.S. Attorney] Skalla did not feel that probable cause existed to believe SUBJECT Manuel Freddy Paulino resided at 1826 Metzerott Road #102." Skalla must have had reasons for her doubts, argues Paulino, and those reasons must have been based on some affidavit or other document that the government is now refusing to release.

The United States conducted an inquiry into its files in response to Paulino's request for Brady information and found nothing beyond what it had already produced. The government told the trial court that the document that Paulino insisted he should get did not exist. AUSA Skalla recalled no information to "negate" Paulino's residence at 1826 Metzerott Road. She simply did not have enough evidence to satisfy her that probable cause existed to issue a search warrant. Similarly, Art Jacobson, the affiant for the search warrants, told the government that no such negative information existed, and that Skalla had just asked him to "develop" his evidence further before applying for a search warrant for apartment #102. The government thus insists that no Brady material exists, and Paulino has offered nothing beyond speculation in response. Mere speculation that Brady material exists

3

does not justify fishing expeditions in government files. United States v. Crowell, 586 F.2d 1020, 1029 (4th Cir. 1978); see also United States v. Morris, 957 F.2d 1391, 1402-03 (7th Cir. 1992). The trial court did not abuse its discretion in disallowing such a search.

Some of the documents which were released to Paulino contained redacted material which pertained to another criminal investigation. Paulino, speculating that some of the redacted passages might contain exculpatory material, continues to insist that he should have had access to the unredacted documents. The trial court reviewed the documents in camera, and concluded that the redacted passages had "absolutely no bearing on Mr. Paulino." The court stated that "clearly, after having reviewed the entire file here, that it just is nothing, under any stretch of the imagination, that can be characterized as exculpatory . . . . I think you're fishing and reaching for straws. It's not there . . . ." We see no basis for overturning this conclusion.

Finally, Paulino fails to sustain his burden of showing that any documents the government might have produced would have been both exculpatory and material, that is, that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 685 (1985); see Brady v. Maryland, 373 U.S. 83 (1963). Even if the government had possessed documents showing that Aslan also used apartment #102, overwhelming evidence at trial established that Paulino controlled the contraband. Paulino was observed at 1826 Metzerott Road prior to his arrest, he had a key to the premises with him, he identified a room inside as his own, personal papers of his were found in the room, he supplied a key and combination to the safe, and one of the bags of cocaine in the closet had his fingerprints on it.

B.

Paulino also alleges that the district court erred in allowing government firearms expert Tom Love to testify concerning the place of manufacture of the ammunition found in Paulino's closet. Agent Love's testimony was introduced to show that the ammunition had previously travelled in interstate commerce, in order to fulfill the "interstate nexus" of the ammunition possession charge. 18 U.S.C.

4

§ 922(g). Paulino argues that Agent Love's testimony was inadmissible under Federal Rules of Evidence 702, 703, and 705 because it was pure speculation, because it was not based on information reasonably relied on by experts in the field, and because Agent Love's experience was minimal.

The trial court did not abuse its discretion by admitting Agent Love as an expert. Persinger v. Norfolk & Western Ry. Co., 920 F.2d 1185, 1187 (4th Cir. 1990). It was established at trial that Love was an ATF agent who had extensive training in firearms, had handled "thousands of firearms and thousands of rounds of ammunition," had participated in arrests of "several hundred persons," and had previously testified in court regarding the interstate nexus of firearms after having received specialized training on the subject. As to the basis of Agent Love's testimony in this case, Love had personally examined the ammunition, had observed that the bullets had "WCC" on their bottoms, and had determined that the ammunition had been manufactured in 1990 in Illinois by Western Cartridge Company. He further testified that there was no major ammunition manufacturer in Maryland (where Paulino resided), and no smaller manufacturer that used the stamp "WCC." Love also contacted a Western Cartridge Company representative to confirm his conclusions.

Many of Paulino's criticisms of Agent Love go to the weight, not the admissibility, of his testimony. For example, such facts as the number of years Love had been an agent, or the number of days of training he had received are issues to be weighed by the jury. Paulino offered nothing to contradict Agent Love's testimony, but instead simply asserted that it was inadmissible and insufficient to establish the interstate nexus. However, the jury weighed the evidence and Agent Love's credibility and found the interstate nexus to have been sufficiently established. Paulino failed at trial to raise a reasonable doubt in the minds of the jurors about Love's credibility, and we decline to endorse his efforts to reverse the jury's conclusion by finding Agent Love's testimony inadmissible.

5

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

6